**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| HUAWEI TECHNOLOGIES USA, INC., & HUAWEI TECHNOLOGIES CO., LTD., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES OF AMERICA, *et al.*, <br><br> *Defendants*. | Civil No. 4:19-cv-00159 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.  SECTION 889 DOES NOT VIOLATE THE BILL OF ATTAINDER CLAUSE. ......................2

   A.  Section 889 Does Not Impose Historical Punishment. ...................................................2

   B.  Section 889 Reasonably Can Be Said To Further Nonpunitive Legislative Purposes.................8

   C.  The Legislative Record Does Not Contain Unmistakable Evidence of Punitive Intent. ..........12

II.  SECTION 889 DOES NOT VIOLATE THE DUE PROCESS CLAUSE. ...............................14

III.  SECTION 889 DOES NOT VIOLATE THE VESTING CLAUSES........................................15

IV.  THE NAMED AGENCY DEFENDANTS SHOULD BE DISMISSED. ................................15

## TABLE OF AUTHORITIES

**CASES**

*American Communications Ass'n, C.I.O., v. Douds,*
    339 U.S. 382 (1950) ..................................................................................................................5

*BellSouth Corp. v. FCC,*
    162 F.3d 678 (D.C. Cir. 1998) ...............................................................................................6

*Bloomer v. McQuewan,*
    55 U.S. 539 (1852) .................................................................................................................14

*Consol. Edison Co. of New York v. Pataki,*
    292 F.3d 338 (2d Cir. 2002) ........................................................................................... 5, 11

*Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa,*
    385 F. App'x 135 (3d Cir. 2010) ...........................................................................................15

*Cummings v. Missouri,*
    71 U.S. (4 Wall.) 277 (1866) ............................................................................................ 3, 6

*Duarte v. City of Lewisville,*
    136 F. Supp. 3d 752 (E.D. Tex. 2015) ............................................................................ 7, 8

*Ex Parte Garland,*
    71 U.S. (4 Wall.) 333 (1866) ............................................................................................ 3, 6

*Flemming v. Nestor,*
    363 U.S. 603 (1960) ......................................................................................................... 11, 13

*Hang On, Inc. v. City of Arlington,*
    65 F.3d 1248 (5th Cir. 1995) ...................................................................................................6

*Hudson v. United States,*
    522 U.S. 93 (1997) .................................................................................................................10

*Hurtado v. California,*
    110 U.S. 516 (1884) ...............................................................................................................14

*Kaspersky Lab, Inc. v. DHS,*
    311 F. Supp. 3d 187 (D.D.C. 2018),
    *aff'd,* 909 F.3d 446 (D.C. Cir. 2018) ..........................................................................2, 3, 4, 7

*Kaspersky Lab, Inc. v. DHS,*
    909 F.3d 446 (D.C. Cir. 2018) ......................................................................................*passim*

*Millard v. Rankin,*
   265 F. Supp. 3d 1211 (D. Colo. 2017) ................................................................8

*Nixon v. Adm'r of Gen. Servs.,*
   433 U.S. 425 (1977) ...............................................................................2, 6, 8, 15

*Perry v. FBI,*
   759 F.2d 1271 (7th Cir. 1985) .........................................................................3

*Plaut v. Spendthrift Farm, Inc.,*
   514 U.S. 239 (1995) ......................................................................................15

*SBC Commc'ns, Inc. v. FCC,*
   154 F.3d 226 (5th Cir. 1998) ...................................................................*passim*

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta,*
   309 F.3d 662 (9th Cir. 2002) .........................................................................8

*Selective Serv System v. Minnesota Public Interest Research Group,*
   468 U.S. 841 (1984) ......................................................................................11

*Shaw v. Patton,*
   823 F.3d 556 (10th Cir. 2016) .......................................................................7

*Smith v. Doe,*
   538 U.S. 84 (2003) ....................................................................................7, 8

*Turner Broad. Sys., Inc. v. FCC,*
   520 U.S. 180 (1997) ......................................................................................4

*United States v. Bajakajian,*
   524 U.S. 321 (1998) ....................................................................................10

*United States v. Brown,*
   381 U.S. 437 (1965) ..................................................................................3, 6

*United States v. Halper,*
   490 U.S. 435 (1989) ....................................................................................10

*United States v. Lovett,*
   328 U.S. 303 (1946) .............................................................................3, 7, 13

*United States v. O'Brien,*
   391 U.S. 367 (1968) ....................................................................................13

*United States v. Segura,*
   747 F.3d 323 (5th Cir. 2014) .......................................................................10

*United States v. Winstar Corp.*,
   518 U.S. 839 (1996) ......................................................................................................................14

*Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown*,
   875 F.2d 453 (5th Cir. 1989) ........................................................................................................15

Congress enacted Section 889 of the 2019 National Defense Authorization Act ("NDAA") to protect U.S. telecommunications networks from the products of five companies required to comply with Chinese law and thus subject to the influence of a foreign government well-known for exploiting any access to our networks.  Congress's recognition of this *undisputed* legal reality does not "mark Huawei as an untrustworthy and disloyal tool of the Chinese government." Ps' Rep. 10.  Rather, it makes Huawei a concern to the security of U.S. telecommunications networks.  Congress is not prohibited from acting to protect those networks from a potential "security threat subject to the direction of the Chinese government," *id.* at 3, and doing so does not turn a prophylactic measure into punishment.  Indeed, the D.C. Circuit held last year that a statute based on similar concerns and with a similar preventative purpose was entirely consistent with the limited reach of the Bill of Attainder Clause.  *See Kaspersky Lab, Inc. v. DHS*, 909 F.3d 446 (D.C. Cir. 2018).

Section 889 was enacted against the backdrop of (i) years of briefings, reports, and testimony, warning that Huawei's (and ZTE's) access to U.S. networks could pose significant threats to U.S. critical infrastructure and domestic communications; (ii) recommendations by the House intelligence committee and senior executive branch officials against using Huawei products on U.S. networks; and (iii) Congress's repeated references to these warnings and recommendations in the precursors to Section 889, in congressional reports, and on the House and Senate floors.  To conclude that Section 889 is a bill of attainder, Huawei would have this Court find that Congress enacted it, not to heed those warnings, adopt those recommendations, and protect the Nation's critical infrastructure and communications, but to punish Huawei.  Such a conclusion is untenable.  It is not supported by any of the three tests for determining whether a statute is an attainder.  And, aside from asking this Court to break unprecedented ground on the meaning of bills of attainder, it would hamstring Congress's ability to protect U.S. networks in the future from specifically identifiable security threats.

Because Huawei's remaining claims are meritless, the Court should enter judgment for

Defendants.  Fed. R. Civ. P. 12(b)(6), 56.

# I.  SECTION 889 DOES NOT VIOLATE THE BILL OF ATTAINDER CLAUSE.

## A.  Section 889 Does Not Impose Historical Punishment.

The historical test for punishment asks whether a statute imposes a burden falling within the "checklist of deprivations and disabilities so disproportionately severe and so inappropriate to nonpunitive ends that they unquestionably have been held to fall within the proscription of [the Bill of Attainder Clause]."  *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 473 (1977).  Huawei argues Section 889 satisfies this test because it imposes an "'exclusion' historically found to constitute punishment," and "seeks to 'banish' Huawei from the country."  Ps' Rep. 5.  But Section 889 does not amount to an "exclusion," and even if it did, the Supreme Court has never recognized an "exclusion" as among the severe deprivations proscribed as attainders.  Huawei's reliance on such a heretofore unrecognized punishment underscores that Section 889 does not impose historical punishment, where Huawei does not even argue that Section 889 prohibits it from operating or actually banishes it from the country.

<u>Exclusion.</u>  Huawei's attempt to cast Section 889 as an "exclusion" comparable to the historical punishments recognized in the employment bar cases is inapt, *first* and principally, because Section 889 does not impose an employment bar.  *See* Ds' Br. 24-27.  Section 889 has nothing to do with employment:  it prohibits federal agencies from procuring, contracting with entities that use, or funding the purchase of certain telecommunications products that pose cyber-risks.  Huawei nevertheless argues that the employment bar cases "cannot be distinguished on the ground that Huawei can continue to do business outside the United States, or that Huawei has others to whom it can sell products and services."  *Id.*  Yes, they can.  In those cases, the legislative enactments at issue "completely prevented individuals from being employed in certain positions or pursuing certain types of vocations."  *Kaspersky Lab, Inc. v. DHS*, 311 F. Supp. 3d 187, 208 (D.D.C. 2018), *aff'd,* 909 F.3d 446;

*see also SBC Commc'ns, Inc. v. FCC*, 154 F.3d 226, 242-43 (5th Cir. 1998) (recognizing same).[1]  Priests could no longer be priests, *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277 (1866), lawyers could no longer be lawyers, *Ex Parte Garland*, 71 U.S. (4 Wall.) 333 (1866), labor union employees could no longer work in labor unions, *United States v. Brown*, 381 U.S. 437 (1965), and government employees could no longer be employed by any government agency, *United States v. Lovett*, 328 U.S. 303, 314 (1946).  By contrast, Section 889 does not preclude Huawei from engaging in its vocation here or anywhere, *see, e.g., Perry v. FBI*, 759 F.2d 1271, 1281 (7th Cir. 1985) ("The defendant agencies have refused to hire Perry for particular positions, but they have not deprived him of the opportunity to follow his chosen profession."), as Huawei admits that Section 889 excludes it from only a "portion[] of the U.S. telecommunications … market," Ps' Rep. 13.  Huawei does not allege it had *any* contracts with federal agencies prior to Section 889, much less that it was completely precluded from pursuing its established vocation.  And any "disincentive" federal contractors, grantees, or other private sector entities may now have to do business with Huawei, Ps' Ex. 29-6, ¶ 19; *see also* Ps' Ex. 36-1,[2] "falls far short of the historical meaning of legislative punishment," *Kaspersky*, 909 F.3d at 463; *see also* Ds' Br. 26-27.[3]

Indeed, "rather than an employment ban, [S]ection [889] much more closely resembles … permissible line-of-business restrictions."  *Kaspersky*, 909 F.3d at 462; *see* Ds' Br. 25-27.  Huawei attempts to distinguish *Kaspersky*'s finding on this point, by asserting that "Section 889 is very different in its scope and effects," and that the restriction at issue in *Kaspersky* was permissible because it was

---

[1] Hereinafter, all internal citations, alterations, quotations, and subsequent history are omitted unless otherwise indicated.

[2] It is not the case, as Huawei contends, that Section 889 "bars … federal contractors and grant and loan recipients from purchasing covered" Huawei products.  Ps' Rep. 8.  *See* § 889(a)(1)(B), (b).

[3] Huawei argues *Kaspersky* is distinguishable on this point because, *inter alia*, the statute at issue (Section 1634 of the 2018 NDAA) did not prevent Kaspersky from engaging in its chosen profession.  Ps' Rep. 8.  But neither does Section 889.  The D.C. Circuit noted that "Kaspersky is one of the world's largest privately owned cybersecurity companies," "it does business all around the globe," and "[b]ecause the federal government [wa]s far from [its] only client," Section 1634 "d[id] not prevent Kaspersky from engaging in its chosen profession."  909 F.3d at 462.  So too, Huawei is "a leading global information and communications technology … solutions provider," "serv[es] more than three billion people," Huawei 2018 Rep., and does not even allege the U.S. Government was a client prior to Section 889.

"limited." Ps' Rep. 9 n.4.  Both points are incorrect.  For starters, Section 1634 and Section 889 are very similar provisions and in many respects, Section 1634 was broader than Section 889.  Section 1634 imposed "a broad and permanent ban" (no waiver provision), precluding federal agencies from *continuing to use* (not simply entering into future contracts for) *any* Kaspersky products and services (not only those that could route, re-direct, or peer into user data). *Kaspersky*, 311 F. Supp. 3d at 214, 219. And in finding Section 1634 akin to permissible line-of-business restrictions, the D.C. Circuit noted that it was *not* as limited as previous restrictions that had been upheld. *Kaspersky*, 909 F.3d at 463.  It nonetheless concluded that the lack of a "statutory escape hatch[]" did not render Section 1634 an impermissible attainder where in pursuit of a legitimate goal—protecting federal computer systems— it prevented Kaspersky from engaging in a particular kind of business—selling products for use in federal computers.  909 F.3d at 463.[4]  Where Section 889 serves a similar purpose by imposing analogous line-of-business restrictions, there is no basis upon which to reach a different outcome here.

*Second*, Section 889 is unlike the acts in the employment-bar cases because it is not based on a trial-like adjudication that Huawei is guilty of wrongdoing.  *See* Ds' Br. 27-29. Huawei argues that Congress, in holding hearings, making findings, and enacting Section 889, legislatively adjudicated Huawei "tainted" based on its past "conduct and associations" with the Chinese government.  Ps' Rep. 11.  But there is, of course, no inherent constitutional problem with Congress holding hearings, engaging in fact-finding, and enacting statutes based upon the information it amasses and findings that it makes.  *See, e.g.*, *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997) ("We owe Congress' findings deference in part because the institution is far better equipped than the judiciary to amass and evaluate the vast amounts of data' bearing upon legislative questions.").  This is so even when those

---

[4] For this reason, there is also no merit to Huawei's argument that *SBC* is distinguishable because the restrictions at issue "either sunset or lifted if" certain conditions were met.  Ps' Rep. 9.  As explained, Section 889 similarly contains a waiver provision, *see* Ds' Br. 25, and, in any event, both *SBC* and *Kaspersky* recognized that the permanence of a restriction is not dispositive, *see id.* at 25-26.

findings and resulting legislation are aimed at particular parties. *See* Ds' Br. 27-28.[5]  In addition, the relevant inquiry for attainder purposes is not whether Congress determined that Huawei is "tainted" by prior associations with the Chinese government, Ps' Rep. 11, but whether the law Congress passed "defines past conduct as wrongdoing and then imposes punishment on that past conduct," *Consol. Edison Co. of New York v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2002).  On that relevant point, Plaintiffs stress that Congress did *not* determine that Huawei had engaged in "wrongdoing," Compl. ¶¶ 47, 49, 99(g), and nothing in Section 889, or even the findings in the bills preceding it, relies on the premise that Huawei was "guilty" of anything.  And, most importantly, the text and legislative record show that Congress enacted Section 889 not to *punish* Huawei for its prior associations with the Chinese government but to *protect* U.S. networks where Huawei's links to the Chinese government—and *undisputed* obligation to comply with Chinese law—could put those networks at risk.  *See* Ds' Br. 28-29, 31-35.  "Of course, the history of the past conduct is the foundation for the judgment as to what the future conduct is likely to be; but that does not alter the conclusion that [Section 889] is intended to prevent future action rather than to punish past action."  *Douds*, 339 U.S. at 413-14; *see also SBC*, 154 F.3d at 237 ("[A] properly crafted prophylactic measure c[an] survive attainder analysis, even where the finding of a propensity for future conduct [i]s based solely on past acts.").

*Third*, in attempting to compare Section 889 to historical employment bars—all of which precluded flesh-and-blood individuals from pursuing their chosen vocations—Huawei either disclaims or ignores the differences between corporations and individuals so "obvious" that the D.C. Circuit has said those differences "must [be] take[n] into account," *Kaspersky*, 909 F.3d at 461.  *See* Ds' Br. 22-24.  Rather than grappling with the fact that Section 889 does not implicate "fundamental guarantees of political and religious freedom" in the way that the employment bars did, Huawei

---

[5] Huawei's argument that *SeaRiver*, *Fresno Rifle*, and *Douds* are inapposite, *see* Ps' Rep. 11 n.7, is circular. The fact that the statutes at issue were found *not* to inflict punishment illustrates that Congress can make particularized findings and enact legislation based on them, and doing so does not amount to a judicial-like adjudication of "guilt."  *See* Ds' Br. 27-28.

contends that such interests were not at issue in those cases.  *See* Ps' Rep. 6 (arguing that the Supreme Court cases do not "say that").  But the D.C. Circuit has repeatedly recognized that they were, *see BellSouth Corp. v. FCC*, 162 F.3d 678 (D.C. Cir. 1998), and even a passing familiarity with those cases reveals that the statutes at issue implicated such freedoms by barring individuals from certain professions "based on [their] political beliefs," *Kaspersky*, 909 F.3d at 463.  Huawei cannot seriously contend that Section 889 has anything to do with its political beliefs,[6] much less that its effects are akin to the freedom of conscience issues implicated by having to renounce one's beliefs, *Brown*, 381 U.S. at 437, or lie under oath, *Cummings*, 71 U.S. at 317; *Ex Parte Garland*, 71 U.S. at 376, to engage in one's chosen profession.  Similarly, rather than contending with the fact that "the stain of a brand of infamy or disloyalty, characteristic of bills of attainder, matters to individuals in a way that it does not to corporations," *Kaspersky*, 909 F.3d at 461; *see* Ds' Br. 23-24, Huawei simply repeats its tired refrain that Section 889 "brand[s]" it as a "disloyal tool of the Chinese government," Ps' Rep. 8,[7] and presupposes at every turn that the two corporate plaintiffs in this case stand on the same footing as the flesh-and-blood humans in the employment-bar cases.[8]  But Congress did not premise its judgment that covered Huawei products pose security risks on any determination about Huawei's loyalty to the

---

[6] Huawei's belated argument that Section 889 implicates its rights of political association because the statute applies to Huawei "because of its supposed association with the Chinese government and Communist Party," Ps' Rep. 6, is meritless.  That allegation is nowhere in the Complaint, so Plaintiffs cannot raise it now.  *See Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1255-56 (5th Cir. 1995).  Nothing in the text or legislative record indicates Section 889 was applied to Huawei because of its political or cultural associations.  *See* Ds' Br. 7-8.  And because the Complaint repeatedly attempts to distance Huawei from the Chinese government and Communist Party, *see, e.g.*, Compl. ¶¶ 30, 33, 38, Huawei's claim now that Section 889 interferes with its right to associate is particularly disingenuous.

[7] The plaintiffs in *SBC* and *Kaspersky* made strikingly similar claims, alleging they had been labeled "guilty spawn of AT&T," 154 F.3d at 233, and "disloyal to the United States," 909 F.3d at 461, the latter based on congressional statements connecting Kaspersky to Russian intelligence, *id.* at 463.

[8] Huawei continues to argue that "its employees have been publicly branded as untrustworthy and disloyal."  Ps' Rep. 6.  As noted, Huawei's employees are not plaintiffs in this case and could not maintain an attainder claim in any event, as Section 889 does not name them, *see Nixon*, 433 U.S. at 538, and the Complaint does not allege that Congress enacted Section 889 to punish them or that they have been harmed as a result, *see* Ds' Br. 23 n.13.  None of the cases Huawei relies on involve attainder claims, much less show Huawei can maintain its claim based on employee harm.  *See* Ps' Rep. 7 n.2.

U.S. Government.  *See* Ds' Br. 7-8 (explaining the Chinese government could exploit Huawei's products with or without its cooperation); *Kaspersky*, 311 F. Supp. 3d at 210 (Section 1634 "d[id] not assume any guilt, disloyalty, or wrongdoing on the part of Kaspersky;" its premise was that Kaspersky's products could be used by the Russian government "with or without Kaspersky[]'s knowledge or consent").  And any financial and reputational consequences to a foreign corporation and its U.S. subsidiary as a result of Congress choosing not to procure or fund certain of its products because of those risks is simply not on par with the personal indignity suffered by individual government employees, "charged with subversive beliefs," tried in "secret executive session," and sentenced to criminal and perpetual exclusion from their "chosen vocation[s]" because of their association with organizations whose aims are "subversive to the [U.S.] Government."  *Lovett*, 328 U.S. at 312.

Banishment.  Huawei's theory that Section 889 imposes "banishment," Ps' Rep. 12-14, is equally unpersuasive where the statute does not expel Huawei from the United States or any sub-division thereof.  Recognizing this, *see id.* at 12, Huawei now argues Section 889 works a banishment by "ostracism," *id.* at 13.  But even the line of cases on which Huawei relies, which involve registration requirements and geographic restrictions on convicted sex offenders, *see id.* at 12, undermine its position.  Those cases confirm that the touchstone of banishment is the complete expulsion of an individual from a geographic area.  *See Smith v. Doe*, 538 U.S. 84, 98 (2003) (historical banishment "involved more than the dissemination of information"; it "expelled [a person] from the community"); *Shaw v. Patton*, 823 F.3d 556, 566 (10th Cir. 2016) (banishment involves "the complete expulsion of an offender from a socio-political community," prohibiting him "from even being present in the jurisdiction").  Thus, even where an ordinance prohibited a convicted sex offender from residing within a certain area, this Court found he had not been "exiled or expelled" from the town where he had lived because residences there, "while perhaps not many in number, were available to [him]," and he could "travel[] in and out of" the restricted area, despite being unable to live there.  *Duarte v. City of*

*Lewisville*, 136 F. Supp. 3d 752, 777 (E.D. Tex. 2015).  Where Section 889 does not restrict Huawei from any geographic area, it does not resemble any historical understanding of banishment.

At most, Huawei alleges that Section 889 is harming its business and reputation in the United States, such that it "threatens [it]s ability to do business [here]."  Ps' Rep. 13.  But Huawei cannot identify even *one* case applying banishment to a business or corporation, much less one suggesting banishment would apply to any harmful market effects of a regulatory statute on such an entity.[9]  Assuming *arguendo* that historical banishment could be inflicted upon a corporation like Huawei, even if Huawei ceased operating in the United States altogether, that would not render Section 889 punitive where the statute itself does not "banish" Huawei from the country.  *See Duarte*, 136 F. Supp. 3d at 779 n.17 ("It is not whether violation of the ordinance could result in punishment, but whether the restrictions contained therein constitute 'punishment.'") (citing *Smith*, 538 U.S. at 99 ("collateral consequence of a valid regulation" does not render it "punitive")).  Huawei's theory is untenable.[10]

**B.  Section 889 Reasonably Can Be Said To Further Nonpunitive Legislative Purposes.**

While Section 889 does not impose burdens historically associated with punishment, even if it did, it is "not punishment [under the functional test] because [it] serve[s] a nonpunitive purpose." *SBC*, 154 F.3d at 243.  The legislative record reflects the widely-shared recognition of Congress and the executive branch that China is among the most active perpetrators of cyber-activity against the United States, and that its strategic insertion of Chinese telecommunications companies onto U.S.

---

[9] Huawei errs in contending that Defendants "cite[d] no authority for [their] suggestion … that a corporation cannot be banished."  *Id.* at 13 n.9.  Defendants cited authority explaining that "'banishment … refers to individuals,'" Ds' Br. 29 (quoting *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 673 (9th Cir. 2002)), and typically arises in cases involving deprivations of citizenship, such as in denaturalization and denationalization proceedings.  In any event, the burden is Huawei's to establish that Section 889 is a punitive measure.  *See Nixon*, 433 U.S. at 476 n.40.

[10] To the extent Huawei attempts to rely on a theory of "effective banishment," *see* Ps' Rep. 12 (citing *Millard v. Rankin*, 265 F. Supp. 3d 1211 (D. Colo. 2017))—a theory never applied in the attainder context, much less to a corporation—it does not come close to alleging the level of ostracism suffered by the plaintiffs in *Millard* due to the Internet-posting of status as convicted sex offenders.  *See* 265 F. Supp. 3d at 1232 (detailing plaintiffs' inability to live and work without fear of arbitrary eviction and firing, restrictions on familial association, and actual physical and mental abuse by the public).

networks could give it a platform to disrupt U.S. critical infrastructure and intercept, modify, or delete domestic communications.  *See* Ds' Br. 4-15.  Congress reasonably tailored Section 889 to that threat by prohibiting federal agencies from procuring, contracting with companies that use, or funding grantee purchases of the particular products from Chinese companies that pose cyber-threats, thereby protecting the networks of federal agencies, contractors, and grantees and ensuring federal funds are not spent to propagate products that threaten U.S. networks.  *See id.* at 31-43.

Huawei, apparently believing that its tailoring arguments are more persuasive if Section 889 is framed in terms of the purposes it posits, doubles down on its view that Section 889's "two most possible nonpunitive purposes" are protecting "national defense" and "government network security" and alleges that Defendants have engaged in a "sleight of hand" by identifying Section 889's purposes to include protecting the networks "of federal contractors and grant[ees]" and "ensuring that companies subject to Chinese government influence do not benefit from U.S. taxpayer dollars."  Ps' Rep. 14.  But the plain terms of Section 889 apply to "an[y] executive agency," § 889(a), (b), not just defense agencies.  And while Section 889 certainly seeks to protect government networks[11]—a sufficient purpose on its own, *see Kaspersky*, 909 F.3d at 457—the text and legislative record show that Congress sought to protect the networks of federal contractors and grantees too, *see* § 889(a)(1)(B), (b); Ds' Br. 14-15, and that it had good reason to do so, *see id.* at 9-10 (explaining targeting of federal contractors and research institutions, among others), 36 (*e.g.*, OPM data breach).  The text and legislative record—as well as the logical implications of a statute limiting procurement and funding— also show that Congress sought to prevent the use of federal funds to propagate on federal, State, and local networks products that pose Chinese cyber-threats.  *See id.* at 14-16, 31 n.20.

Section 889 so plainly furthers these nonpunitive purposes that Huawei next attempts to distort the applicable law for the functional test in two ways.  *First*, Huawei incorrectly asserts that the

---

[11] For this reason, there is no basis for Huawei's argument that Defendants' position "contradicts" its claim that Section 889 has a similar purpose to the statute at issue in *Kaspersky*.  Ps' Rep. 14-15.

"prophylactic exception" recognized in *SBC*, 154 F.3d at 237, is "irrelevant" "dicta" that applies only to historical employment bars, Ps' Rep. 28 n.18.  "A statement is not dictum," however, "if it … constitutes an explication of the governing rules of law," and a key rationale for limiting the authority of dictum is that it "may not have received the full and careful consideration of the court that uttered it." *United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014).  The prophylactic exception is part of the governing rule of law in attainder cases, and far from failing to give careful consideration to the exception, the Fifth Circuit spent the majority of its attainder analysis explaining it.  *See SBC*, 154 F.3d at 235-42.  In doing so, it relied on cases that did not involve employment bars, such as *Flemming*, *Nixon*, and *Selective Service System*, and broadly concluded that "the historical punishment test is [not] dispositive on its own," quoting cases holding broadly that "[e]ven measures historically associated with punishment" have been upheld "when the nonpunitive aims of an apparently prophylactic measure have seemed sufficiently clear and convincing." *Id.* at 242.  The prophylactic exception is binding law, and it is not limited to historical employment bars.  *See id.* at 243.

*Second*, Huawei attempts to evade Defendants' showing that Section 889 passes the functional test by mistakenly contending that "[a] law must have wholly nonpunitive purposes to satisfy the Attainder Clause."  Ps' Rep. 16.  In support of its contention, Huawei relies on three cases.  The first, *United States v. Bajakajian*, concerned what constitutes a "fine" for purposes of the Eighth Amendment's Excessive Fines Clause, 524 U.S. 321, 331 (1998), not what constitutes punishment for purposes of the Bill of Attainder Clause.  The second, *United States v. Halper*, 490 U.S. 435 (1989), was not an attainder case either and has been abrogated—not "*overruled on other grounds*," as Huawei represents, but *on the precise grounds* for which Huawei relies on it.  *Compare* Ps' Rep. 16 (quoting *Halper* for the proposition that "'a civil sanction that cannot fairly be said solely to serve a remedial purpose … is punishment'"), *with Hudson v. United States*, 522 U.S. 93, 102 (1997) (explaining that "*Halper*'s test for determining whether a particular sanction is 'punitive[]' … has proved unworkable," rejecting the

requirement that a sanction be "'solely' remedial," and recognizing that "all civil penalties have some deterrent [*i.e.,* punitive] effect"). And the third, *Consolidated Edison*, held that the statute at issue constituted a bill of attainder because it did not further any nonpunitive purposes at all, *see* 292 F.3d at 353-54 (finding "no connection" between the burdens imposed by the statute and either of its possible legitimate purposes). Under the correct standard for the functional test, a statute is not punitive if it reasonably can be said to "serve a nonpunitive purpose." *SBC*, 154 F.3d at 243.[12]

With the appropriate purposes and applicable law in place, Huawei is left to recycle its arguments that Section 889 is overbroad and underinclusive. *See* Ps' Rep. 18-26. But Defendants addressed in their opening brief all of the arguments Huawei re-raises, showing that Section 889 is not "significantly overbroad," such that it "pil[es] on ... additional, entirely unnecessary burden[s]," *Kaspersky*, 909 F.3d at 455, 460, and is not so underinclusive that it "seemingly burdens one among equals," *id.* at 456. *See* Ds' Br. 35-44.[13] In response, Huawei gives short shrift to the aspects of Section 889 that demonstrate its tailoring, *see* Ds' Br. 32-36, arguing that because Section 889 does not impose "further burdens does not make the[] burdens [it imposes] any less punitive," Ps' Rep. 25. But the fact that Section 889 does not impose further burdens—indeed, that its burdens are tailored to the problem it aims to address—shows precisely why Section 889 is not punitive. *See Selective Serv.*, 468 U.S. at 855 ("Certain aspects of the legislation belie[d] the view that [it] [wa]s a punitive measure.").

Huawei also continues to argue that Section 889 functions as a punitive measure because it limits only future procurement and direct grant-funding and does not prohibit federal agencies and grantees from continuing to use covered Huawei products. *See* Ps' Rep. 17, 21. Huawei's continued reliance on this argument undermines its assertions elsewhere that Section 889 imposes "sweeping"

---

[12] Not only is Huawei's proposed standard not supported by the cases it cites, it is contrary to well-established principles of attainder jurisprudence, including "that there must be unmistakable evidence of punitive intent" to strike a statute down on attainder grounds," *Flemming*, 363 U.S. at 619, and that courts discern that intent by looking at Congress's motivations "as a whole," *SBC*, 154 F.3d at 226.

[13] Defendants do not repeat those arguments here but maintain that Huawei's arguments, including its argument based on Section 889's selectivity, *see* Ps' Rep. 21-24, are meritless.

burdens on it. *Id.* at 7, 9. Huawei does nothing to undermine Defendants' showing that Section 889 reasonably mitigates the risks it seeks to address, *see* Ds' Br. 41-42, and thus cannot show that Section 889 is punitive on the basis that it did not burden Huawei *enough*, *see id.* at 40-41. And, as Defendants explained, Section 889's limited restrictions are reasonable in light of the long-term security risks Congress identified. *See id.* at 42. As Huawei notes, *see* Ps' Rep. 17, Congress enacted Section 889 in part to limit the expanded adoption of Huawei products, thereby ensuring a diversity of suppliers and avoiding dependence on one whose products could be exploited by a foreign adversary in the future, *see* Ds' Br. 42. The HPSCI recognized that cybersecurity depends on diversity, *see id.* at 7; NATO has reiterated it, *see* Ds' Ex. 27 at 20 ("[V]iable alternatives to Huawei technology are necessary to preserve flexibility of choice and to prevent being trapped with one supplier."); and Huawei's own security officer acknowledged that Huawei's soup-to-nuts approach to telecommunications services undermines network security, *see* Ds' Br. 42 n.28; *see also* Ex. 29-6, ¶ 19 (explaining that once installed, "companies rely on Huawei to service" its equipment and "to provide updates to and replacements for components that are part of their networks"). That Section 889 does not impose added burdens while addressing this long-term threat underscores its prophylactic nature.

**C. The Legislative Record Does Not Contain Unmistakable Evidence of Punitive Intent.**

Where Huawei does not satisfy the historical or functional tests, it also falls well short of identifying the "unmistakeable evidence of punitive intent" required to satisfy the motivational test. *SBC*, 154 F.3d at 243; *see also Kaspersky*, 909 F.3d at 463 (the motivational "prong by itself is not determinative in the absence of unmistakable evidence of punitive intent"). To the contrary, the text and legislative record show that Congress enacted Section 889 to protect the networks of federal agencies, contractors, and grantees from Chinese cyber-threats, including by restricting the expenditure of federal funds to propagate the use of products posing such threats. *See* Ds' Br. 44-45. Section 889 itself does not express any intention to punish Huawei for past actions. And the

congressional debate directly preceding Section 889's enactment, as well as *years* of congressional proceedings concerning Chinese cyber-threats, overwhelmingly convey Congress's motive to protect U.S. critical infrastructure and domestic communications from exploitation by the Chinese government via Chinese companies with access to U.S. networks.  *See* Ds' Br. 4-12, 14-15.

Notwithstanding this extensive body of material to draw from, Huawei largely relies on the snippets of statements of only five legislators, arguing that they "display a pattern of punitive intent." Ps' Rep. 27.[14]  But Huawei again, as it did in its opening brief, takes certain statements out of context, attempting to establish an intent in Section 889 to punish Huawei based on statements referring to a provision, never enacted, that would have re-imposed sanctions on ZTE, *see* Ps' Rep. 27 n.17 (citing Sen. Cotton "death penalty" stmt.), as well as statements that are not referring to the NDAA at all, *see id.* at 28 (citing Sen. Rubio stmt. referring to Huawei's partnerships with U.S. universities).[15]  In addition, when other quotes are read in full, *compare* Ps' Rep. 28 (selectively quoting Sen. Rubio "direct links" stmt. and Sen. Blumenthal "part of our communications system" stmt.), *with* Ps' Exs. 10, 12, they do not show an intent to *punish* Huawei but rather, to *protect* U.S. networks from companies whose products could be exploited by the Chinese government.  And most importantly, even if all the statements Huawei relies on could be used to show punitive intent on the part of the five legislators who made them, they fail to establish that Congress "as a whole" enacted Section 889 to punish Huawei.  *SBC*, 154 F.3d at 243; *see also United States v. O'Brien*, 391 U.S. 367, 384 (1968) ("What

---

[14] Huawei also attempts to analogize these statements to those in *Lovett*. *See id.* at 27-28.  As discussed below, even if all of the statements Huawei cites could be used to show that the legislators who made them had punitive motives, they would still fail to satisfy the motivational test.  And *Lovett* turned, not on particular statements of individual congressmen, but on its unique legislative history, *see Flemming*, 363 U.S. at 615, namely that three government employees were subjected to a one-sided, secret trial by a subcommittee specially convened to adjudicate and dispose of their cases; adjudged guilty of engaging in "subversive activity," defined for the first time by the committee; and criminally barred from pursuing their chosen vocations—a punishment "invoked for special types of odious and dangerous crimes," *Lovett*, 328 U.S. at 309-16.

[15] Huawei asserts that "[a] cursory review of the punitive statements cited in [its] opening brief shows that they relate to Huawei, and not (or not simply) ZTE."  Ps' Rep. 27.  That is incorrect with respect to most of the statements cited in Huawei's opening brief, as Defendants have shown, *see* Ds' Br. 46.

motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.").[16]  Huawei can call them "numerous" and "various," Ps' Rep. 27, but at the end of the day, they are the statements of five among 535, and where the text and decade-long legislative record of Section 889 show Congress's prophylactic purposes, any punitive intent expressed by select quotes of a handful of legislators does not overcome the overwhelming evidence to the contrary.

## II.  SECTION 889 DOES NOT VIOLATE THE DUE PROCESS CLAUSE.

Huawei cannot state a procedural or substantive due process claim.  *See* Ds' Br. 47-48.  In response, Huawei again fails to explain what sort of due process claim it is bringing and instead seeks another bite at the apple on its attainder claim.  *See* Ps' Rep. at 29 n.19 (citing *Lovett* and recapitulating argument that Section 889 constitutes a trial by legislature).  In attempting to refashion this claim, Huawei relies on inapposite decisions and dicta, contending that Defendants failed to address the cases it cited in its opening brief.  *See id.* at 29.  But Huawei cannot build new due process doctrine from these spare parts.  None of the Supreme Court cases Huawei relies on hold that selective legislation violates due process.  *Hurtado v. California*, 110 U.S. 516, 538 (1884), decided that due process does not require states to indict by grand jury.  *United States v. Winstar Corp.*, 518 U.S. 839, 843 (1996) (plurality op.), did not involve a due process claim but instead concerned enforceability of a government contract.  And *Bloomer v. McQuewan*, 55 U.S. 539, 554 (1852), made clear that its reflections on due process principles were dicta because Congress did *not* interfere with any property rights.  And the out-of-circuit cases Huawei cites, *see* Ps' Br. 30, all concerned state and local government action the courts found essentially adjudicative, thus requiring application of procedural due process principles.  Duly enacted federal statutes are not reversible on due process grounds solely on the basis

---

[16] This is so even if the statute's sponsors made the statements.  *See Kaspersky*, 909 F.3d at 464 (even if sponsor's statements "reveal[ed] a personal desire to punish Kaspersky," they would be insufficient absent "corroborating evidence" showing that other legislators "shared her supposedly punitive motivations").  *Kaspersky* and *SBC* show there is no basis for Huawei's assertion that if any legislator had a "penal purpose[]," then it is irrelevant whether Congress had "preventive goals."  Ps' Rep. 26.

of selectivity.  *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 239 n. 9 (1995) ("Even laws that impose a duty or liability upon a single individual or firm are not on that account invalid—or else we would not have the extensive jurisprudence that we do concerning the Bill of Attainder Clause . . . .").

## III.  SECTION 889 DOES NOT VIOLATE THE VESTING CLAUSES.

Huawei's amorphous separation of powers claim, purportedly rooted in the Vesting Clauses, cannot stand in light of *SBC*'s express rejection of such a theory and a commonsense application of separation of powers jurisprudence.  *See* Ds' Br. 49-50.  As to *SBC*, Huawei attempts to muddy the waters, contending that *SBC* did not reject a claim explicitly premised on the Vesting Clauses.  Ps' Rep. 30.  While that may be so, the logic of the claim in *SBC* was exactly the same as that raised here, as shown by the fact that both claims cite the same cases.  *Compare SBC*, 154 F.3d at 244-46, *with* Ps' Mot. 32-35.  Huawei also fails to show how Section 889 prevents the other branches from accomplishing their constitutional functions.  *See* Ds' Br. 50 (separation of powers cases involved particular, well-defined constitutional rules violated by the statutes challenged).  Congress does not violate the Constitution merely by legislating on a subject upon which executive or judicial action *could* be had.  Huawei's position is based on an "archaic view of the separation of powers as requiring three airtight departments of government" that the Supreme Court has rejected.  *Nixon*, 433 U.S. at 443.

## IV.  THE NAMED AGENCY DEFENDANTS SHOULD BE DISMISSED.

Huawei invokes Rule 19 in response to Defendants' motion to dismiss the agency defendants. Ps' Rep. 30.  But Rule 19 is not a defense to a Rule 12(b)(6) motion.  *See Vieux Carre Property Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 457 (5th Cir. 1989) ("[B]efore a party will be joined . . . as a defendant the plaintiff must have a cause of action against it.").  And "an unsubstantiated [and] speculative risk" that the agency defendants would still try to enforce Section 889 even if the Court were to invalidate it is insufficient to show that a party is required to be joined.  *Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 145 (3d Cir. 2010).

Dated:  September 10, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

JOSEPH D. BROWN
United States Attorney

JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Avenue; Suite 700
Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
(903) 590-1400
(903) 590-1346 (fax)
Texas State Bar # 24065295

JOSHUA M. RUSS
Assistant U.S. Attorney
Eastern District of Texas
101 Park Blvd.; Suite 500
E-Mail: Josh.M.Russ@usdoj.gov
(972) 509-1201
(972) 509-1209 (fax)
Texas State Bar # 24074990

DIANE KELLEHER
ERIC R. WOMACK
Assistant Branch Directors

*/s/ James Powers*
EMILY SUE NEWTON (Va. Bar No. 80745)
JAMES R. POWERS (TX Bar No. 24092989)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Telephone: (202) 353-0543
Fax:  (202) 616-8470
E-mail: james.r.powers@usdoj.gov

*Counsel for Defendants*